IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ISRAEL SOENTPIET,                    )
                                     )
              Plaintiff,             )    Civil No. 04-1055-JO
                                     )
       v.                            )    <u>OPINION AND ORDER</u>
                                     )
COMMISSIONER OF SOCIAL SECURITY      )
ADMINISTRATION,                      )
                                     )
              Defendant.             )

Tim D. Wilborn
TIM D. WILBORN, ATTORNEY AT LAW
2020-C S.W. 8th Avenue
PMB #294
West Linn, OR  97068

     Attorney for Plaintiff

Neil J. Evans
Assistant United States Attorney, District of Oregon
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204

David R. Johnson
Lucille G. Meis
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue
Suite 2900 M/S 901
Seattle, WA  98104

JONES, Judge:

Plaintiff Israel Soentpiet seeks judicial review of a final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits (DIB) and supplemental security income (SSI) disability benefits.

This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a careful review of the record, this court concludes that the Commissioner's decision is supported by substantial evidence, contains no errors of law, and is affirmed.

## ADMINISTRATIVE HISTORY

Soentpiet filed an application for DIB and SSI on March 5, 1999, alleging he had been unable to work since October 15, 1998, because of drug and alcohol dependancy and bipolar disorder.  After his applications were denied initially and on reconsideration, Soentpiet requested a hearing before an Administrative Law Judge (ALJ).

The ALJ held a hearing on August 3, 2000, at which he heard testimony from Soentpiet, represented by John Donahue, a Social Security Claimant Representative with the Oregon Department of Human Services; Soentpiet's therapist, Von Lee Lewis QMHP; and a vocational expert, Michael Ott.  On August 24, 2000, the ALJ issued a decision denying Soentpiet's application for benefits.  The August 24, 2000, decision by the ALJ became the final decision of

the Commissioner when the Appeals Council denied Soentpiet's request for review.  Soentpiet challenges that decision in the present action.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993).  This court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

## DISABILITY ANALYSIS

The Commissioner engages in a five-step sequential inquiry to determine whether a person is disabled within the meaning of the Social Security Act (SSA). 20 C.F.R. §§ 404.1520, 416.920.  Each step is potentially dispositive.

Step One:  The Commissioner determines whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the Commissioner proceeds to Step Two.

Step Two:  The Commissioner determines whether the claimant has a severe impairment. 20 C.F.R. § 416.920(c).  If so, the Commissioner proceeds to Step Three.  If not, the claimant is not disabled and the inquiry is finished.

Step Three:  The Commissioner determines whether the claimant's impairment meets or equals one of the impairments listed in the SSA regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See also* 20 C.F.R. § 416.920(d).  If the claimant's impairment meets or equals one of the listed impairments, he is disabled.  If not, the Commissioner proceeds to Step Four.

Step Four:  The Commissioner determines whether the claimant is capable of performing his past relevant work.  20 C.F.R. § 416.920(e)-(f).  If so, the claimant is not disabled.  If not, the Commissioner proceeds to Step Five.

Step Five:  The Commissioner determines whether the claimant has the residual functional capacity to perform any other work.  20 C.F.R. § 416.920(g).  If the claimant is not able to perform other work, he is disabled.  The Commissioner has the burden of showing that a claimant can perform jobs that exist in significant numbers in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).  The Commissioner may meet this burden with the testimony of a vocational expert (VE) or by reference to the Medical-Vocational guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2.  If the Commissioner demonstrates that there are a significant number of jobs that the claimant can perform, then the claimant is not disabled.  Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 416.920(g)(1).

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ employed the five-step inquiry to evaluate Soentpiet's disability.  First, the ALJ determined that although Soentpiet worked at the level of substantial gainful activity from

March 21, 2000, until May 4, 2000, after the onset of his disability, this was an unsuccessful work attempt due to its limited duration.  Tr. 20.[1]

Second, the ALJ found that the medical evidence demonstrated that Soentpiet suffers from bipolar disorder with psychotic features when untreated, and that he has a history of drug and alcohol abuse.  Further, the ALJ found that these impairments were severe.  Tr. 21.

Third, the ALJ determined the record as a whole shows that Soentpiet's impairments were not severe enough for a period of twelve months or more to meet or equal any of the impairments listed in the SSA regulations.  Tr. 21.

The ALJ noted that the record contains a report by Shelly B. Getzlaf, Ph.D., describing Soentpiet as having more severe symptoms in late May of 1999.  Tr. 21.  However, the ALJ found that this report was contradictory to the record as a whole, and to the assessments of Soentpiet's treating psychiatrist, George Mecouch, D.O.  Tr. 21-22.  Dr. Mecouch reported on May 5, 1999, that Soentpiet was well controlled on medication.  Tr. 21.

The ALJ also found that a Mental Residual Function Capacity Report completed on August 1, 2000, by Ross Cordes, NP, PMHNP, and MSW, which gave a more severe appraisal of Soentpiet's impairments, was contrary to the record as a whole, as well as the appraisals of the treating psychiatrist, and Soentpiet's academic performance during a college term.  Tr. 22.

At the fourth step, the ALJ found Soentpiet had a residual functional capacity with no exertional limitations.  Tr. 23.  Non-exertional limits included "the need for routine and

---

[1]Citations to the official transcript of record filed with the Commissioner's Answer (# 4) on November 24, 2004, are referred to throughout as "Tr."

repetitive work, moderate limits in the ability to perform stressful work, and the ability to maintain attention and concentration for periods of at least two hours at a time." Tr. 23.

In making this finding, the ALJ considered Soentpiet's testimony, which the ALJ found to be mostly credible except for his complaints of severe short term memory loss, which the ALJ found to be contrary to the record. Tr. 23.

The ALJ next determined that Soentpiet could return to his past relevant work as a motel clerk, stock clerk, or pizza maker. Tr. 23-24. In making this determination, the ALJ relied on the testimony of the VE that these jobs consisted of routine and repetitive tasks, are not excessively stressful, and do not require concentration in excess of Soentpiet's capabilities. Tr. 24. Consequently, the ALJ found that Soentpiet was not disabled as defined by the SSA, and denied his application for benefits. Tr. 24-25. Based on that finding, the ALJ did not reach the fifth step in the disability analysis.

## DISCUSSION

Plaintiff Soentpiet challenges the ALJ's findings on several grounds. *See* Plaintiff's Brief at 9-19 (# 14) on June 17, 2005. First, Soentpiet asserts that the ALJ erred in rejecting evidence contained in the record, including the Residual Functional Capacity Report completed by Ross Cordes on August 1, 2000 (hereafter Cordes Report); the assessment of Dr. Shelly Getzlaf, dated June 4, 1999 (hereafter Getzlaf Report); and the testimony of Soentpiet's therapist, Von Lee Lewis, stating that he did "not believe [Soentpiet] could handle the full 40 hours a week." Tr. 664.

Second, Soentpiet claims that the ALJ erred by concluding that his impairments did not meet or equal any of the Agency's listed disabilities. Soentpiet contends that if the ALJ had

credited the rejected evidence, the record demonstrates that his impairments meet or exceed a listed disability.

Third, Soentpiet asserts that the ALJ's residual functional capacity finding was vague and did not include all his impairments, so that the ALJ posed a hypothetical to the VE that did not fully describe Soentpiet's condition. Soentpiet contends that the ALJ should have made findings as to what environmental factors contributed to Soentpiet's stress and how those factors contribute to his ability to sustain employment.

Finally, Soentpiet contends that the ALJ did not properly determine whether Soentpiet's prior work history constituted past <u>relevant</u> work. Specifically, Soentpiet asserts that the ALJ asked the VE about Soentpiet's prior work history, and not about Soentpiet's past <u>relevant</u> work. Further, Soentpiet contends the ALJ did not solicit any evidence about whether Soentpiet worked in his past jobs long enough to have learned the requisite skills necessary to perform those jobs. I will address each argument in turn.

1.    <u>**The ALJ's Consideration of the Evidence**</u>

Plaintiff asserts that the ALJ improperly rejected the Residual Functional Capacity report completed by Ross Cordes on August 1, 2000; the assessment of Dr. Shelly Getzlaf, dated June 4, 1999; and the testimony of Soentpiet's therapist, Von Lee Lewis, at the hearing that he did "not believe [Soentpiet] could handle the full 40 hours a week." Tr. 664.

The record does contain contradictory medical reports. *See, e.g.*, Tr. 157, 181, 602, 614-15. However, because of the particular nature of Soentpiet's impairments, Soentpiet is going to have days that are better than others. One particular medical assessment may vary widely with another depending upon the date on which the assessment was conducted.

The Cordes Report indicates that Soentpiet has marked limitations in three areas:
1) performing activities within a schedule; 2) sustaining an ordinary routine without special
supervision; and 3) completing a normal workday and workweek without interruptions from
psychologically based symptoms while performing at a consistent pace without an unreasonable
number and length of rest periods. Tr. 615.

In considering the Cordes Report, the ALJ noted that it was "at variance with the medical
record as a whole, with the appraisals of the treating psychiatrist, and with the excellent
academic achievement by Soentpiet in his first college term." Tr. 22. Although the report was
completed by one of Soentpiet's treating therapists, as the ALJ noted, the medical records from
Soentpiet's treating psychiatrist, Dr. Mecouch, as well as reports from Soentpiet's other treatment
providers, show continuing improvement and an absence of disabling symptoms when on
medication. Tr. 21-22. In two Psychiatric Review Technique evaluations (one apparently dated
October 14, 1999 and one apparently dated June 4, 1999) (Tr. 150 and 174), the evaluators noted
only slight functional impairments. Tr. 157 and 181. Based on my review of the record, I
conclude that the ALJ's findings with respect to the Cordes Report are supported by substantial
evidence.

Plaintiff asserts that the ALJ's reasons for dismissing Mr. Cordes' report were not clear
and convincing. Plaintiff's Opening Brief at 11. However, when a treating physician's opinion is
contradicted by another doctor, the ALJ need only give "specific and legitimate reasons
supported by substantial evidence in the record." Lester v. Chater, 81 F.3d 821, 830 (9th Cir.
1995) (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). As noted, there are
contradicting reports in the record. *See, e.g.*, Tr. 157, 181, 602, 614-15. Therefore, the ALJ is

required to give specific reasons that are supported by substantial evidence. *See* <u>Lester</u>, 81 F.3d at 830. I conclude that the ALJ did not err, because he gave specific reasons for rejecting the report, and these reasons are supported by substantial evidence in the record. Tr. 21-22.

With respect to the Cordes Report, Plaintiff appears to assert that because it was co-signed by a psychiatrist, Dr. Cynthia Romero, nearly a month after it was completed by Mr. Cordes, this affirmation should give some additional weight to the report. However, this court did not find any evidence in the record that Dr. Romero ever personally met, treated, or evaluated Soentpiet. Therefore, the fact that the Cordes Report was later signed by Dr. Romero does not give it substantial additional weight. *See* <u>Ramirez v. Shalala</u>, 8 F.3d 1449, 1453 (9th Cir. 1993) (giving the opinion of a non-treating, non-examining physician who saw Ramirez for the first time at the hearing less weight).

Second, Plaintiff contends that the ALJ improperly rejected the assessment of Dr. Shelly Getzlaf. Dr. Getzlaf was not one of Soentpiet's treating doctors. Rather she evaluated Soentpiet on one occasion, May 26-27, 1999. Tr. 145-149. In general, opinions of examining doctors are entitled to less weight than those of treating doctors. *See* <u>Lester</u>, 81 F. 3d at 830. Further, like opinions of treating doctors, opinions of examining doctors may be rejected if the ALJ gives "specific and legitimate reasons supported by substantial evidence in the record." <u>Id.</u> With respect to Dr. Getzlaf's evaluation, the ALJ made the following determination:

> The conclusions of this evaluator, in particular the very low GAF score, are inconsistent with the contemporary daily records compiled by the professionals at the residential treatment center who worked directly with the Soentpiet (Exhibit 11F). This report is also inconsistent with the detailed reports of the treating psychiatrist, Dr. Mecouch (Exhibits 7F and 11F). The records from the treating sources are considered much more reliable than this one time evaluation.

Tr. 21-22.

Because the ALJ gave specific reasons that are supported by substantial evidence in the record, I conclude that the ALJ did not err by giving less weight to the Getzlaf Report.

Finally, Plaintiff claims that the ALJ did not give proper credit to the statements made by Mr. Von Lee Lewis during the hearing. The relevant portion of the transcript reads as follows:

> [Lewis]: Okay. I think that if -- especially, if it were a full-time job, I think that eventually, the stress would, again, cause something very similar to what happened, you know, back when he was doing the evening -- nighttime job. Because I think stress has a definite effect on him, over a period of time. And I can see him, you know, stopping some of his meds again. And, eventually, at least may start decompensating, that sort of thing. So, my opinion is probably that a part-time job until he can demonstrate that a full-time -- you know, that he can meet the expectations of [sic] the challenges of that.
>
> [ALJ]: And with our -- in your professional opinion, what time frame are we looking at, for that transition to occur?
>
> [Lewis]: Well, I would say -- you know, in the sixth month maybe -- say six months, but anywhere from four to eight months of being exposed, you know, to the rigors of holding a job and holding it consistently, and meeting the expectations that the supervisor may have for him. I think that would take a while. But, it -- you know, that four to eight month period would really give you a clear picture of how well, you know, he could do. And then could [sic] he make that transition to more -- you know, to more hours, that sort of thing. But, I see some difficulty there, in that. I just, at this time, do not believe that he could handle the full 40 hours a week.

Tr. 664.

In his decision, the ALJ found the testimony of Mr. Lewis credible to the extent "that he has reported progress made by the Soentpiet, the fact that he [Soentpiet] is not totally consistent in his performance, and that there are still goals to be met." Tr. 23. However, as to the above quoted statement, the ALJ found that "[c]onversely, the statement that the Soentpiet will not be ready for full time work for a number of months is an assessment and conclusion which is

OPINION AND ORDER -- Page 10

reserved to the Commissioner and beyond the area of expertise of the individual." Tr. 23; *see also* Social Security Ruling (SSR) 96-5p.

Mr. Lewis' statement does not qualify as an expert opinion and is merely an unsubstantiated conclusion. Further, Mr. Lewis testified that the Soentpiet was ready for work, but just not a 40-hour week. The record shows that the ALJ did evaluate the testimony of Mr. Lewis and weighed it in light of all the other evidence. There was no legal error, and the ALJ's decision to disregard this portion of Mr. Lewis' testimony was based on substantial evidence in the record.

**2.       The ALJ's Listed Disability Determination**

Plaintiff contends that the ALJ erred in not finding that his disability met or equaled one of the listed disabilities in 20 C.F.R. § 404, Subpt. P, App. 1. Specifically, Plaintiff contends that he meets the requirements of Listing 12.04. Listing 12.04 may be met by satisfying the requirements of both the A criteria and the B criteria, or, alternatively, by meeting the requirements of the C criteria. 20 C.F.R. § 404, Subpt. P, App. 1 at 478-79. Plaintiff claims he meets the requirements under either alternative.

The C criteria do not apply to Plaintiff's case. The C criteria did not become effective until September 20, 2000. *See* 65 Fed. Reg. 50746, 50775-776, & 50780. New revisions to the Social Security regulations apply if they become effective while the application for benefits is in the administrative process, up until the date of the Commissioner's final decision. *See* Scamihorn v. Gen. Truck Drivers, 282 F.3d 1078, 1083 (9th Cir. 2002) ("Regulations cannot be applied retroactively unless Congress has so authorized the administrative agency and the language of the regulations requires this result."). In Soentpiet's case, because the Appeals

Council denied review, the date of the Commissioner's "final decision" was the date of the ALJ's decision, August 24, 2000. Therefore, because the C criteria did not become effective while Soentpiet's application was pending, they are not applicable to Soentpiet's claim.

With respect to the other alternative, criteria A and B, the ALJ found that the Soentpiet met the A criteria with medical records establishing bipolar disorder. Tr. 21. However, the ALJ found that Soentpiet did not meet the B criteria requirements and therefore does not satisfy the requirements for Listing 12.04. *See* Tr. 21.

To meet the B criteria requirements, Soentpiet must demonstrate at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § 404, Subpt. P, App. 1 at 479.

Soentpiet claims that he meets two of these: marked difficulties in maintaining concentration, persistence, or pace; and repeated episodes of decompensation. Soentpiet relies on the report by Dr. Getzlaf for the first requirement. However, as discussed above, the ALJ gave the Getzlaf Report less weight relative to the reports of Dr. Mecouch. I find that because the Getzlaf Report was contrary to the longitudinal reports of Soentpiet's treating psychiatrist, Dr. Mecouch, and therefore given less weight, the ALJ's determination that Soentpiet did not meet the first requirement was based on substantial evidence.

For the second requirement, Soentpiet relies on two episodes between October of 1998 and August of 2000 to establish repeated episodes of decompensation. Plaintiff's Opening Brief at 17. However, "repeated episodes of decompensation" is defined by regulation as three

episodes within one year. 20 C.F.R. § 404, Subpt. P, App. 1 at 474. Plaintiff did not point to any other episodes of decompensation during the relevant time period and this court did not find any indication in the record that there were other episodes. Therefore, I find that Soentpiet did not suffer repeated episodes of decompensation as defined by the regulations. The ALJ's determination that Soentpiet's impairments did not meet or equal Listing 12.04 is supported by substantial evidence and is free from legal error.

3. **The ALJ's RFC Determination**

The ALJ found that the Soentpiet "retains a residual functional capacity with no exertional limitations. Non-exertional factors include the need for routine and repetitive work; moderate limits in the ability to perform stressful work; and the ability to maintain attention and concentration for periods of at least two hours at a time." Tr. 23.

Plaintiff contends that this finding was impermissibly vague because the ALJ did not define or clarify what factors would constitute stressful work for Soentpiet. For his assertion, Plaintiff relies on Social Security Ruling 85-15. In relevant part, it states:

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. . . . Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment.

SSR 85-15.

Plaintiff contends that this ruling requires the ALJ to give specific findings as to what conditions will cause stress in an individual. This court does not read a requirement to give specific findings as to what causes a particular claimant stress in SSR 85-15. The ALJ is only required to <u>include</u> in the RFC the limitation created by the individual's response to the demands of work. The ALJ did include Soentpiet's limitations with regard to stress in his RFC assessment

when he found that Soentpiet had "moderate limits in the ability to perform stressful work." Tr. 23.

There is no indication in the record of what constitutes "stressful work" for Soentpiet. Soentpiet himself did not define "stressful" when asked why a prior work attempt had failed. *See* Tr. 647. During the hearing, Soentpiet said: "It just -- it got too stressful. It was hard to keep the pace up. And I was working 40 hours a week. It was just -- it was a real strain on my body." Tr. 647. The law does not require the ALJ to try to guess all the particular situations that may be stressful for Soentpiet. Soentpiet did not testify at the hearing as to what work situations were stressful for him. *See* Tr. 646-48. The ALJ recognized and incorporated into his RFC the limitations Soentpiet had to stressful work. This assessment was based on substantial evidence and was free from legal error.

**4**.     **The ALJ's Determination of Past Relevant Work**

Plaintiff contends that the ALJ did not properly determine whether Soentpiet's prior work history constituted past <u>relevant</u> work. Specifically, Soentpiet asserts that the ALJ asked the VE about Soentpiet's prior work history, but not about Soentpiet's past <u>relevant</u> work. Further, Soentpiet contends the ALJ did not solicit any evidence about whether Soentpiet worked in his past jobs long enough to have learned the requisite skills necessary to perform them effectively.

At the fourth stage, the burden is on Soentpiet to prove he can no longer perform his past relevant work. <u>Tackett</u>, 180 F.3d at 1098; *see also* C.F.R. §§ 404.1512(a), 404.1520(f), 416.912(a), 416.920(f). Moreover, the ALJ is allowed to rely on the VE's expertise in determining what jobs a claimant would be able to perform with given impairments that would constitute substantial gainful activity. <u>Id.</u> at 1100-1101.

At the hearing, the ALJ asked the VE to give a brief description of Soentpiet's prior work history," and the physical and skill requirements for the jobs [Soentpiet's] held." Tr. 669. Although the ALJ did not use the exact phrase "past relevant work," he did ask the VE about the skills needed to perform Soentpiet's prior jobs.

The CFRs define past relevant work as: "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 416.960(b)(1). By asking the VE to describe the skill requirements for Soentpiet's past jobs, the ALJ considered whether the jobs were "relevant." Further, the VE was aware that he was supposed to be considering past relevant work as evidenced by his later referral to "past relevant work." *See* Tr. 671-672.

The ALJ properly posed a hypothetical to the VE based upon the RFC finding, and the VE gave his professional opinion in response to the hypothetical. Plaintiff had the opportunity to object to the questions that the ALJ posed to the VE at the hearing, but plaintiff raised no objections, and he did not pose additional questions regarding the relevancy of his past skills. *See* Tr. 668-72.

As discussed above, the ALJ's RFC finding was based on substantial evidence and was free from legal error. The ALJ's hypothetical reflected each of Soentpiet's limitations that were supported by substantial evidence. The record shows that the ALJ solicited information about the skills required to perform Soentpiet's prior jobs. Soentpiet did not meet his burden of proving he was unable to perform his past relevant work; therefore, the ALJ did not err in finding that plaintiff could perform the work of motel clerk, stock clerk, or pizza maker.

## **CONCLUSION**

For the foregoing reasons, and based on my review of the record, the Commissioner's decision denying Soentpiet disability insurance benefits and supplemental security income disability benefits is supported by substantial evidence on the record as a whole and is, therefore, AFFIRMED.

DATED this 30th day of September, 2005.

/s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge